UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEANNETTA MAXENA,

     Plaintiff,                          CASE NO.:

vs.

OSCEOLA COUNTY BOARD OF
COUNTY COMMISSIONERS,

     Defendant.

_____/

## COMPLAINT

COMES NOW the Plaintiff, JEANNETTA MAXENA (hereinafter "MAXENA"), by and through the undersigned Counsel, and sues the Defendant, OSCEOLA COUNTY BOARD OF COUNTY COMMISSIONERS (hereinafter the "BOARD") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Florida Civil Rights Act of 1992, Florida Statutes §§ 760.01-760.11 (the "FCRA"), and the Americans with Disabilities Act ("ADA"). In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.     This Court is vested with federal question jurisdiction over MAXENA's claims arising under the following: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Americans with Disabilities Act ("ADA"). This Court has supplemental jurisdiction over MAXENA's related claims arising under state and local laws, pursuant to 28 U.S.C. § 1367.

1

2.     Venue lies within the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §§ 1391(b) and (c), because all actions relevant to MAXENA's claims arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

3.     All conditions precedent to the maintenance of this action have been met or waived.

4.     MAXENA timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of the commission of the unlawful employment practices of the BOARD. A copy of said Charge is attached hereto as **Exhibit "A."**

5.     On or about August 28, 2025, the U.S. Equal Opportunity Commission issued a Notice of Right to Sue, following Plaintiff's requesting a right to sue. This Notice of Right to Sue was received by MAXENA's counsel on September 23, 2025. A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**.

6.     This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

7.     Plaintiff, MAXENA is a resident of Orange County, Florida, over the age of eighteen years, and otherwise *sui juris*.

8.     MAXENA was and is a member of a protected group under Title VII and the FCRA's prohibitions against race, color, and national origin discrimination and retaliation, namely: MAXENA is African American and of Haitian ancestry.

9.     MAXENA was and is a member of a protected group under the ADA's prohibition against disability discrimination, namely: MAXENA is diabetic.

10.     At all times material hereto, the BOARD is and was a government entity tasked with governing Osceola County, Florida.

11.     At all times material, the BOARD was and is an "employer" within the meaning of Title VII and the FCRA.

12.     MAXENA was an "employee" of the BOARD and an "aggrieved person" within the meaning of 42 U.S.C. § 2000e(f) and the FCRA § 760.02(10) during the times relevant to this Action.

## GENERAL ALLEGATIONS

13.     MAXENA began her employment with the BOARD on June 17, 2024, in the Human Resources and Risk Management Department as a Human Resources Special Projects Specialist.

14.     MAXENA reported directly to Human Resources and Risk Management Director, Ms. MARIA COLON (hereinafter "COLON").

15.     When MAXENA began her employment with the BOARD, COLON asked about MAXENA's background, and MAXENA spoke with her about her race and national origin, and how they had shaped her experiences.

16.     In August of 2024, in an effort to be proactive and transparent, MAXENA informed COLON of her diabetes and asked about the process required to take time off for doctor's appointments related to her disability. COLON responded that she would inform her assistant, Ms. WANDA RAMIREZ of her condition in the event that MAXENA's blood sugar ever fell too low and she required a can of coke or juice.

17.     On September 11, 2024, MAXENA learned via email from FMLA specialist, Ms. ANN MADERA (hereinafter "MADERA"), that she would be removed from her office and placed in a cubicle. All of MAXENA's White and Hispanic colleagues retained their offices.

18.     MADERA and COLON explained to MAXENA that the change in her workspace was because the Assistant County Manager was moving into one of the offices. However, this never occurred, and instead, two Hispanic employees who were previously in cubicles, ROBERT MORALES and EYME GIL (hereinafter "GIL"), were moved into the empty offices.

19.     MAXENA's move soon sparked a joke among her co-workers that she had been "demoted" from an office to a cubicle. GIL and the Diversity Manager, Ms. BRENDA HERNANDEZ (hereinafter "HERNANDEZ") made comments in condescending tones such as "We're going to have a productive day, right?" while laughing at her as MAXENA passed them on her way to her new cubicle.

20.     On September 12, 2024, MAXENA once again met with COLON and MADERA to discuss her need for reasonable accommodation as to her diabetes – namely, so that MAXENA could test her blood sugar in private now that she no longer had her own office. She was assured multiple times that she would receive accommodations for her disability; however, she never received any accommodation despite her multiple attempts to be accommodated.

21.     Later that same day, MAXENA met with Assistant County Manager, Ms. CELESTIA MCCLOUD (hereinafter "MCCLOUD"), who is also a Black woman, hoping to confide in her as to how to navigate an office that was mostly Hispanic and where everyone was talking around and about MAXENA in Spanish, a language she did not speak.

22.     MAXENA expressed to MCCLOUD that she felt she was being treated differently because she was Black and did not speak Spanish. She shared that she was making every effort to

be a team player and that she hoped to eventually work her way up to a promotion, but that she felt it was going to be harder for her as a Black person in this work environment. However, MCCLOUD became visibly upset with MAXENA when she shared her concerns, and no changes in the workplace came of the meeting.

23.    MAXENA made conscious efforts to be welcoming to others, even bringing in pastries and cards, but she would still hear people refer to her as "Negra" when they were speaking Spanish, and everyone would stop talking whenever she entered a space. It was extremely isolating for MAXENA, and her supervisors either refused to take corrective action, or were in on the discriminatory actions.

24.    Between September 12, 2024, and September 20, 2024, COLON commented "they're eating the pets," on several occasions while walking directly behind MAXENA's open cubicle, referring to then-candidate Donald Trump's false claims that Haitian immigrants were abducting and eating pets in Springfield, Ohio. These statements were witnessed by HERNANDEZ and GIL, and evidenced COLON's bias against Black/Haitian people. MAXENA was shocked to hear Osceola County's Human Resource Director, and her direct supervisor, repeating these hurtful and offensive statements about Haitian immigrants, especially given the fact that COLON knew of MAXENA's background, and MAXENA was the only employee of both African American and Haitian descent in the Human Resources department. This only further alienated MAXENA, who was herself of Haitian ancestry.

25.    MAXENA's attempt to discuss the dynamics of the workplace and her discomfort with her colleagues' treatment of her with MCCLOUD was not received kindly by COLON. On November 14, 2024, COLON called MAXENA into her office. She informed MAXENA that she

had been made aware of her meeting with MCCLOUD and proceeded to reprimand her for it. At one point, she screamed at the top of her voice, "You went to Ms. McCloud?! What did you say?!"

26.    COLON also yelled at MAXENA for having applied to another job with the city of St. Cloud, which MAXENA had not previously shared with her. COLON said she had learned of MAXENA's application through "small town talk." Assistant Human Resources Director, Ms. AMY CRUZ (hereinafter "CRUZ"), who was present in the office during this encounter, had previously worked in St. Cloud, and was nodding in agreement with COLON.

27.    COLON continued to scream at MAXENA, berating her for a Corrections Department Report that she had written just after she had taken bereavement leave after the death of her father. MAXENA had never been given any guidance on this assignment, nor had she received any negative feedback on it or any other work product prior to this interaction.

28.    That same day, all twenty Human Resources employees gathered to celebrate COLON's birthday at lunch in the office. They were all seated at a very large table, and COLON asked them to go around and each state their race and ethnicity. If someone stated they were Puerto Rican, they received a round of applause. MAXENA was the only employee in the department of both African American and Haitian ancestry.

29.    The three individuals who sat at the head of the table did not state their race or ethnicity. These individuals were MCCLOUD, COLON, and CRUZ.

30.    That evening, MAXENA received an email from the city of St. Cloud stating that they would not be moving forward with her employment application.

31.    On November 20, 2024, MAXENA was terminated from her position by the Employee Relations Manager, Mr. JOSE RODRIGUEZ, and CRUZ. They claimed that the reason for her termination was that she had sent an email from her work email address to her personal

email address. CRUZ, a White, fluent Spanish-speaker, had also sent emails to MAXENA's personal address from her work email. She did this while holding the position of Human Resources Manager and was promoted to Assistant Human Resources Director in September of 2024.

**COUNT I – VIOLATION OF TITLE VII**
**RACE AND NATIONAL ORIGIN DISCRIMINATION**

32.　　Plaintiff MAXENA realleges and incorporates by reference the allegations in paragraphs 1 through 31 above as if fully set forth herein.

33.　　MAXENA is a member of a protected class due to her race (African American).

34.　　MAXENA is a member of a protected class due to her national origin (Haitian). MAXENA is a Black American of both African American and Haitian ancestry.

35.　　At all times necessary, MAXENA was qualified to perform her duties as a Human Resources Special Projects Specialist.

36.　　During the course of MAXENA's employment with the BOARD, MAXENA was subjected to a discriminatory, hostile, and offensive work environment because of her race (African American) and national origin (Haitian), as more fully described in the General Allegations.

37.　　The offensive and discriminatory conduct referred to in the General Allegations was offensive to MAXENA and would be offensive to a reasonable person.

38.　　MAXENA was subjected to the conduct referred to in the General Allegations of this Complaint because she is African American and of Haitian descent.

39.　　MAXENA's colleagues directed the conduct referred to in this Complaint to MAXENA.

40.　　MAXENA's termination constituted an adverse employment action against her, which was causally related to MAXENA's race and national origin.

41.    Similarly situated non-African American and non-Haitian employees were treated more favorably by the BOARD's supervisors than MAXENA. Specifically, the conduct endured by MAXENA as referred to in the General Allegations of this Complaint was not faced by MAXENA's non-African American and non-Haitian counterparts.

42.    As a direct and proximate result of the foregoing, MAXENA has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

43.    Any alleged nondiscriminatory reason for this treatment by the BOARD is a mere pretext for the actual reason for discriminating against MAXENA for her race and national origin.

44.    What is more, the aforementioned actions of the BOARD were willful, wanton, intentional, and with malice or with reckless indifference to MAXENA's statutorily protected rights and the consequences of such actions, such that MAXENA is entitled to punitive damages.

45.    As a result of the deprivations of rights at the hands of the BOARD, MAXENA has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT II – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## RACE AND NATIONAL ORIGIN DISCRIMINATION

46.    Plaintiff MAXENA realleges and incorporates by reference the allegations in paragraphs 1 through 31 above as if fully set forth herein.

47.    At all times material hereto, the BOARD  failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

48.    MAXENA is a member of a protected class due to her race (African American).

8

49.    MAXENA is a member of a protected class due to her national origin (Haitian). MAXENA is a Black American of both African American and Haitian ancestry.

50.    At all times necessary, MAXENA was qualified to perform her duties as a Human Resources Special Projects Specialist.

51.    During the course of MAXENA's employment with the BOARD, MAXENA was subjected to a discriminatory, hostile, and offensive work environment because of her race (African American) and national origin (Haitian), as more fully described in the General Allegations.

52.    The discriminatory conduct referred to in the General Allegations was offensive to MAXENA and would be offensive to a reasonable person.

53.    MAXENA was subjected to the conduct referred to in the General Allegations of this Complaint because she is African American and of Haitian descent.

54.    MAXENA's colleagues directed the conduct referred to in this Complaint to MAXENA and also failed to address it.

55.    MAXENA's termination constituted an adverse employment action against her, which was causally related to MAXENA's race (African American) and national origin (Haitian).

56.    Similarly situated non-African American and non-Haitian employees were treated more favorably by the BOARD's supervisors than MAXENA. Specifically, the conduct endured by MAXENA as referred to in the General Allegations of this Complaint was not faced by MAXENA's non-African American and non-Haitian counterparts.

57.    As a direct and proximate result of the foregoing, MAXENA has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

58.     Any alleged nondiscriminatory reason for this treatment by the BOARD is a mere pretext for the actual reason for discriminating against MAXENA for her race and national origin.

59.     The BOARD's actions were malicious and were recklessly indifferent to MAXENA's rights pursuant to Fla. Stat. § 760.10.

60.     The aforementioned actions of the BOARD were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

61.     MAXENA has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause, which she is entitled to recover pursuant to Fla. Stat.§ 760.021 and otherwise by law.

## COUNT III – DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

62.     Plaintiff MAXENA realleges and incorporates by reference the allegations in paragraphs 1 through 31 above as if fully set forth herein.

63.     To establish a prima facie case for discrimination under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), an employee must show that they were: (1) disabled; (2) qualified to perform the job; and (3) subject to an adverse employment action because of their disability. *Schutz v. Royal Caribbean Cruises, Ltd.*, 465 F.Supp.3d 1232 (S.D. Fla. 2020); see also *Ward v. United Parcel Service*, 580 F.App'x 735, 740 (11th Cir. 2014) (citing *Cleveland v. Home Shopping Network, Inc.*, 399 F.3d 1189, 1193 (11th Cir. 2004).

64.     Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, requires covered employers, such as the BOARD, to provide reasonable accommodations to otherwise qualified employees with disabilities. Reasonable accommodations include, but are not limited to, ensuring compliance with medical work restrictions.

65.     The BOARD is, and at all material times was, engaged in commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is an "employer" as defined by 42 U.S.C. § 12111(5).

66.     At the time of her termination from employment with the BOARD, MAXENA was a qualified individual with a disability as contemplated by 42 U.S.C. § 12111(8).

67.     MAXENA is otherwise a qualified individual with a disability who was able to perform all of the functions of her position as a Human Resources Special Projects Specialist, but required certain accommodations providing her with sufficient time off for doctor's visits and a private area in which she could test her blood sugar while performing her daily job duties.

68.     Specifically, the BOARD was aware of MAXENA's disability and her need for reasonable accommodations.

69.     After being advised of her disability and requests for accommodation, the BOARD subsequently discriminated and retaliated against MAXENA.

70.     Specifically, in retaliation to MAXENA's requests for accommodations, the BOARD took an adverse job action against MAXENA, including, but not limited to, transferring her from a private office to an open cubicle without justification, and ultimately terminating her employment.

71.     MAXENA's fellow colleagues who did not have any known disabilities were not subject to the same discriminatory treatment, including being transferred from a private office to an open cubicle without justification, and also being terminated without cause, despite replicating the same or similar conduct.

72.    Any alleged nondiscriminatory reason for this treatment of MAXENA by the BOARD is a mere pretext for the actual reason for discriminating against her based on her disability.

73.    The BOARD's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630 through retaliation against MAXENA after she requested reasonable accommodations in the workplace.

74.    As a result of the BOARD's retaliatory actions, MAXENA has suffered mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and MAXENA will suffer losses in the future.

75.    The BOARD's actions caused, and continue to cause, irreparable harm through MAXENA's loss of gainful employment and loss of valuable employment benefits which she would have received had she not been unlawfully terminated.

76.    The BOARD acted in a manner deemed willful, wanton, intentional, with malice, and/or with reckless indifference to MAXENA's statutorily protected rights, and the consequences of such actions thereby would entitle her to punitive damages.

## COUNT IV – RETALIATION IN
## VIOLATION OF TITLE VII

77.    Plaintiff MAXENA realleges and incorporates by reference the allegations in paragraphs 1 through 31 above as if fully set forth herein.

78.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because

he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 et seq.

79.    MAXENA is a member of a protected class due to her race (African American), who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

80.    MAXENA is a member of a protected class due to her national origin (Haitian), who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

81.    MAXENA engaged in a statutorily protected expression. Namely, she made complaints to MCCLOUD against her colleagues and supervisors for subjecting her to discriminatory treatment, resulting in a hostile work environment.

82.    The BOARD's management took no further or definitive action to resolve the harassment and discrimination taking place in the workplace, instead allowing it to continue until MAXENA was wrongfully terminated after being targeted and retaliated against in the workplace.

83.    A causal connection exists between the complaints to MCCLOUD made by MAXENA with regard to the discriminatory treatment (i.e. a statutorily protected expression) and the adverse employment faced by MAXENA, namely her termination.

84.    The BOARD disciplined MAXENA for pretextual reasons and ultimately terminated her as a result of her complaints of harassment and discrimination due to her race and national origin.

85.    As a direct and proximate result of the BOARD's conduct and its employees' actions, MAXENA has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits which she would have continued to receive had she not been unlawfully terminated.

86.    What is more, the unlawful employment practices complained of above committed by the BOARD were willful, wanton, intentional and with malice or with reckless indifference to MAXENA's statutorily protected rights, such that MAXENA is entitled to punitive damages.

87.    MAXENA has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT V - RETALIATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT OF 1992

88.    Plaintiff MAXENA realleges and incorporates by reference the allegations in paragraphs 1 through 31 above as if fully set forth herein.

89.    The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

90.    The BOARD is an "employer" as defined by § 760.09(7) of the Florida Statutes.

91.    MAXENA is a member of a protected class due to her race (African American) and national origin (Haitian), who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

92.    MAXENA engaged in a statutorily protected expression, namely she made complaints to MCCLOUD against her colleagues and supervisors for subjecting her to discriminatory treatment, resulting in a hostile work environment.

14

93.    The BOARD's management took no definitive action to resolve the discrimination taking place in the workplace, instead allowing it to continue until MAXENA was wrongfully terminated.

94.    A causal connection exists between the complaints to MCCLOUD made by MAXENA with regard to the discriminatory treatment (i.e. a statutorily protected expression) and the adverse employment action faced by MAXENA, namely her termination.

95.    The BOARD disciplined MAXENA for pretextual reasons and ultimately terminated her as a result of her complaints of harassment and discrimination due to her race and national origin.

96.    As a direct and proximate result of the BOARD's conduct and its employees' actions, MAXENA has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits which she would have continued to receive had she not been unlawfully terminated.

97.    What is more, the unlawful employment practices complained of above committed by the BOARD were willful, wanton, intentional and with malice or with reckless indifference to MAXENA's statutorily protected rights, such that MAXENA is entitled to punitive damages.

98.    MAXENA has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause, which she is entitled to recover pursuant to Fla. Stat.§ 760.021 and otherwise by law.

## COUNT VI – HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

99.    Plaintiff MAXENA realleges and incorporates by reference the allegations in paragraphs 1 through 31 above as if fully set forth herein.

100.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

101.    The phrase "terms, conditions, or privileges of employment" as included in 42 U.S.C. § 2000e et seq. evidences a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

102.    A hostile work environment exists, in violation of 42 U.S.C. Sect. 2000(e), et seq., when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

103.    MAXENA is an African American woman and guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

104.    MAXENA is a woman of Haitian descent and guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

105.    MAXENA, at all times relevant herein, was qualified for her position as a Human Resources Special Projects Specialist.

106.    During the course and scope of her employment with the BOARD, MAXENA was subjected to unwelcome harassment and discriminatory treatment because of her race and national origin. Despite being a hardworking employee, the BOARD and its management actively mistreated MAXENA, treating MAXENA differently compared to similarly situated non-African American and non-Haitian employees, subjecting her to harassment or otherwise allowing it to continue, and ultimately terminating her employment under pretext.

107.    The BOARD's management received reports of these incidents and the hostile work environment they created directly from MAXENA herself.

108.    At that time, the BOARD was alerted to the ongoing derogatory treatment MAXENA was experiencing from her colleagues.

109.    Notwithstanding MAXENA's complaint, the BOARD took no further action at that time to resolve the discriminatory treatment against MAXENA. Instead, the BOARD engaged in and otherwise allowed the discriminatory treatment to continue until MAXENA's termination.

110.    The discrimination experienced by MAXENA was sufficiently severe and pervasive to create a discriminatorily abusive working environment.

111.    MAXENA, who was the victim of race and national origin discrimination, harassment, and retaliation was subsequently terminated from her employment with the BOARD.

112.    The BOARD's unlawful employment practices complained of above, deprived MAXENA of her statutory rights under Title VII.

113.    The BOARD and its employees/agents discriminated against MAXENA with respect to her employment by subjecting MAXENA to continued discriminatory treatment and a hostile work environment.

114.    The BOARD's actions are in violation of Title VII because the BOARD discriminated against MAXENA and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of MAXENA's employment and thereby damaged her.

115.    As a direct and proximate result of the BOARD's conduct and its employees' actions, MAXENA has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits which she would have continued to receive had she not been unlawfully terminated.

116.    What is more, the unlawful employment practices complained of above committed by the BOARD were willful, wanton, intentional and with malice or with reckless indifference to MAXENA's statutorily protected rights, such that MAXENA is entitled to punitive damages.

117.    MAXENA has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause of action, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT VII – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

118.    Plaintiff MAXENA realleges and incorporates by reference the allegations in paragraphs 1 through 31 above as if fully set forth herein.

119.    A hostile work environment claim arising from the FCRA is analyzed under the same laws applicable to Title VII claims.

120.    A hostile work environment exists, in violation of Fla. Stat. Chapter 760.10(1)(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the

harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

121.    MAXENA is an African American woman and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

122.    MAXENA is a woman of Haitian descent and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

123.    MAXENA, at all times relevant herein, was qualified for her position as a Human Resources Special Projects Specialist.

124.    During the course and scope of her employment with the BOARD, MAXENA was subjected to unwelcome harassment and discriminatory treatment because of her race and national origin. Despite being a hardworking employee, the BOARD and its management actively mistreated MAXENA, treating MAXENA differently compared to similarly situated non-African American and non-Haitian employees before terminating her employment under pretext.

125.    As described fully in the General Allegations, MAXENA was subjected to repeated discriminatory treatment due to her race.

126.    The BOARD's management received reports of these incidents and the hostile work environment they created directly from MAXENA herself.

127.    At that time, the BOARD was alerted to the ongoing derogatory treatment MAXENA was experiencing on a daily basis from both her colleagues and direct supervisors.

128.    Notwithstanding MAXENA's complaint, the BOARD took no further action at that time to resolve the discriminatory treatment against MAXENA. Instead, the BOARD engaged in and otherwise allowed the discriminatory treatment to continue until MAXENA's termination.

129.    The discrimination experienced by MAXENA was sufficiently severe and pervasive to create a discriminatorily abusive working environment.

130.    MAXENA, who was the victim of race and national origin discrimination, harassment, and retaliation was subsequently terminated from her employment with the BOARD.

131.    The BOARD's unlawful employment practices complained of above, deprived MAXENA of her statutory rights under the FCRA.

132.    The BOARD and its employees/agents discriminated against MAXENA with respect to her employment by subjecting MAXENA to continued discriminatory treatment and a hostile work environment.

133.    The BOARD's actions are in violation of the FCRA because the BOARD discriminated against MAXENA and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of MAXENA's employment and thereby damaged her.

134.    As a direct and proximate result of the BOARD's conduct and its employees' actions, MAXENA has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits which she would have continued to receive had she not been unlawfully terminated.

135.    What is more, the unlawful employment practices complained of above committed by the BOARD were willful, wanton, intentional and with malice or with reckless indifference to MAXENA's statutorily protected rights, such that MAXENA is entitled to punitive damages.

136.    MAXENA has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for

services rendered in this cause of action, which she is entitled to recover pursuant to Fla. Stat.§ 760.021 and otherwise by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, JEANETTA MAXENA, demands judgment against Defendant, OSCEOLA COUNTY BOARD OF COUNTY COMMISSIONERS, and requests the following relief:

a)    A judgment in favor of MAXENA for the BOARD's violations of Title VII, the FCRA, and the ADA;

b)    An award to MAXENA for actual damages MAXENA suffered;

c)    An award to MAXENA of back pay and value of lost employment benefits;

d)    An award to MAXENA of front pay for the years she would have worked absent the BOARD's discriminatory treatment;

e)    A judgment in favor of MAXENA for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress MAXENA has suffered and continues to suffer;

f)    An award to MAXENA for punitive damages she sustained as a direct and proximate result of the BOARD's unlawful conduct;

g)    An award to MAXENA for prejudgment interest on all monetary recovery obtained;

h)    An award to MAXENA for all attorney's costs and fees reasonably incurred in connection with claims made on her behalf in this action;

i)    An injunction permanently enjoining the BOARD, any of its applicable officers, agents, employees, assignees, and/or persons in active concert of participation with them, from engaging in any employment practices in violation of Title VII, the FCRA, and the ADA; and

j)    Such other and further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff, JEANETTA MAXENA, demands a trial by jury on all issues so triable.

Dated November 24, 2025.

Respectfully submitted,

**Sconzo Law Office, P.A.**
300 Ave of the Champions, Suite 260
Palm Beach Gardens, FL 33418
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
**Primary Email:** greg@sconzolawoffice.com
**Secondary Email:** alexander@sconzolawoffice.com